UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Nos.: 3:09-CR-56-TAV-HBG |
| | ) | 3:10-CR-30-TAV-HBG |
| JOHN R. TOLBERT, JR., | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

These criminal actions are before the Court on the government's Emergency Motion Under 18 U.S.C. § 3145(a) for Revocation of Magistrate Judge's Release Order [No. 3:09-cr-56, Doc. 75; No. 3:10-cr-30, Doc. 41].[1] The government requests that the Court revoke the decision of United States Magistrate Judge C. Clifford Shirley, Jr. [Doc. 77], to release the defendant pending a hearing on the potential revocation of his supervised release, currently scheduled for December 14, 2017 [Doc. 70]. The defendant filed a response in opposition to the government's motion [Doc. 78]. On November 21, 2017, this Court heard oral argument on the merits of the government's motion. After considering the arguments advanced by both parties, the Court issued an oral ruling revoking Magistrate Judge Shirley's release order and ordering the defendant detained pending his revocation hearing. The Court now enters this memorandum opinion to further elaborate on its ruling.

---

[1] After this point, for the sake of brevity, all ECF docket numbers refer to entries in Case No. 3:09-cr-56 unless otherwise specifically stated.

I.   **Background**

On May 27, 2010, Judge Thomas W. Phillips sentenced the defendant to a term of fifty-four months' imprisonment and three years' supervised release for possession of an unregistered short-barreled shotgun [Doc. 52].  Then, on November 15, 2010, Judge Curtis L. Collier sentenced the defendant to a term of thirty-seven months' imprisonment and three years' supervised release for assaulting a Deputy United States Marshal ("DUSM") [No. 3:10-cr-30, Doc. 27].  This sentence ran consecutive to the sentence for the firearm-possession offense [*Id.* at 2].  The assault offense arose out of an incident in which the defendant struck a DUSM in the head with a water pitcher after the jury found him guilty of the firearm-possession offense and several DUSMs attempted to take him into custody [No. 3:10-cr-30, Doc. 12].  As he was being escorted out of the courtroom following this incident, the defendant shouted threats of violence to Judge Phillips, Assistant United States Attorney Cynthia Davidson, and others [*Id.*].

The defendant was released from federal prison on July 26, 2017 [Doc. 75 p. 1].  Then, on August 25, 2017, the probation officer filed sealed petitions for a warrant for the defendant's arrest in both cases, on the ground that he had violated his conditions of supervised release by committing another federal, state, or local crime [Doc. 68].  Specifically, the probation officer asserted that on August 16, 2017, the defendant had been charged with two felonies in Knox County—aggravated assault and possession of a weapon by a convicted felon [*Id.* at 2].  The conduct underlying these offenses allegedly occurred exactly three weeks after the defendant's release from prison.  Magistrate Judge

H. Bruce Guyton signed both petitions, and warrants for the defendant's arrest promptly issued. On August 28, both cases were reassigned to this Court from Judges Phillips and Collier [No. 3:09-cr-56, Doc. 67; No. 3:10-cr-30, Doc. 33]. Then, on August 30, the probation officer amended the sealed petitions to include the following information:

> The defendant was arrested by Knoxville Police on August 24, 2017, charged with the following: Warrant @1208280, Aggravated Assault (Domestic) and Warrant @1208281, Possession of a Weapon by a Convicted Felon.
>
> According to the Affidavits of Complaint: "This Incident occurred on or about Wednesday, August 16, 2017, at 21:30 at Winterset Dr. [O]n 08/16/2017 at 21:30 hours, Officer H. Snoderly (2165) responded to an Aggravated Assault at 4505 Winterset Rd. Officers met with the victim, Telisa Tyler, in the parking lot of Pine Ridge Apts. Telisa stated a few minutes earlier the defendant, John Tolbert Jr, drove by her house and pointed a gun at her. The defendant is the nephew of Telisa's husband, Joseph Tyler. Telisa stated the defendant has recently been dating a friend of Telisa's daughter and this friend brought the defendant to Telisa's house. Telisa stated the family knows the defendant's past and did not want him around their house. Telisa stated the defendant then began calling multiple family members threatening them. On this date and time Telisa stated she saw the defendant outside her house in a dark red Dodge Charger. Telisa stated defendant saw her standing in the doorway and pointed a black handgun at her through the window. The defendant then drove away. A few minutes later Telisa's step-daughter, Jonasia Tyler, received a call from the defendant. Defendant then told Jonasia[,] "Your daddy is gonna die tonight." Defendant has also made threats via Facebook [M]essenger saying he was going to give the family's addresses to his 60's (gang members) if they called the police."

[Doc. 69 p. 2]. The probation officer also noted that the defendant has been diagnosed with bipolar disorder, has a history of violent behavior, and has multiple past convictions for assault, robbery, disorderly conduct, resisting arrest, and unlawful possession of firearms [*Id.* at 3]. Thus, based on this history and the assaultive nature of his new offense conduct,

3

the probation officer recommended that the defendant be detained pending his revocation hearing because he poses a danger to the community [*Id.*].

On November 15, the defendant made an initial appearance before Magistrate Judge Shirley and requested a detention hearing [Doc. 70]. That hearing was held the next day, November 16 [Doc. 76].[2] The defendant's counsel proffered that the two Knox County felony charges—aggravated assault and firearm possession—had been dismissed on the merits at a preliminary hearing, on the ground that the State of Tennessee's witnesses were unable to testify definitively whether the defendant had wielded a firearm. But since that time, the defendant had entered a guilty plea to Tennessee simple assault, a misdemeanor. The factual basis for that conviction, according to the defendant's counsel, is that the defendant was overheard making threats in the background of a telephone call to which he was not an active participant. Counsel also proffered that the defendant had received an offer of employment—which counsel's investigator was able to verify by telephone during the detention hearing—and that defendant could live with either his girlfriend or brother until the revocation hearing. The government responded that the defendant poses a great risk to the safety of others and the community, given his lengthy history of violence and threats, the assaultive nature of his most recent offense, his diagnosed mental illness, and the short time period between his release and subsequent violation. The government conceded, however, that the defendant did not pose a flight risk.

---

[2] Although a print transcript of the November 16 hearing is not currently available, the Court has reviewed the audio recording of that proceeding.

After considering both parties' arguments, Judge Shirley elected to release the defendant subject to certain conditions [Doc. 77]. In addition to the standard conditions of pretrial release, Judge Shirley ordered that the defendant: (1) obtain and maintain stable employment; (2) remain within the Eastern District of Tennessee; (3) remain in home detention at his girlfriend's residence, with certain exceptions (e.g., going to work and attorney visits); (4) avoid all direct or indirect contact with the victims of the assault conviction; and (5) abstain from any social media use [*Id.* at 2]. Judge Shirley stated that, while the burden of proving suitability for release rests with the defendant under these circumstances, *see infra* Part II, he found by clear and convincing evidence that the defendant did not pose a risk to the safety of the community with the above conditions in place. The next day, the defendant informed the probation officer that living at his former girlfriend's home, as Judge Shirley had ordered, was not feasible because they were no longer a couple [Doc. 78-1]. Judge Shirley then gave his verbal permission for the defendant to relocate to his sister's residence [*Id.*] The probation officer has also verified the defendant's employment at Ebony Lounge [*Id.*].

On November 17, the government filed an emergency motion asking this Court to revoke Judge Shirley's order releasing the defendant [Doc. 75]. The Court heard oral argument from the parties on the merits of the government's motion on November 21, 2017 [Doc. 79]. The government argued that the defendant had failed to carry his burden of proving by clear and convincing evidence that he does not pose a danger to the community. The government submitted that only three weeks passed between the defendant's release

from federal prison and his commission of another crime. The government noted that, while the defendant's felony charges may have been dismissed for lack of probable cause, the defendant actually entered a guilty plea to misdemeanor assault. And to corroborate the assaultive nature of the August 16 incident, the government entered into evidence a Facebook message the defendant allegedly sent that day before his arrest [Doc. 81]. This message appears to have threatened the victim family that, if they reported the conduct underlying the defendant's assault conviction to the police, he would provide their address to "every 60 in the city" [*Id.*]. The government proffered that "60" refers to the Rollin 60s Crips, a street gang to which the defendant allegedly belongs.

The government further argued that Judge Shirley did not adequately consider the extent of the defendant's history of violence. The government pointed to the defendant's conviction for using a sawed-off shotgun to commit robbery, his assault of a Deputy United States Marshal, his threats to other court personnel, his history of mental health issues, and his lengthy history of violent threats, including taking a butcher knife to school to threaten his teacher at age nine and threatening to kill his mother with a metal pole at age sixteen. Finally, the government argued that Judge Shirley improperly shifted the burden of proof from the defendant to the government by basing his ruling on "nothing more than the fact that the [government] did not provide any evidence other than the assault conviction" [Doc. 75 p. 3]. The government argued that the defendant's proof of an employment offer and a stable living situation—which ultimately proved unworkable, requiring a change in his place of residence—was insufficient to meet his burden.

The defendant responded that he did offer clear and convincing proof that, with sufficient safeguards in place, he does not pose a danger to the community. The defendant noted that the felony charges underlying the revocation petitions have been dismissed for lack of probable cause, and the remaining misdemeanor assault conviction arose merely out of verbal threats heard in the background of a telephone call. Further, the defendant's conviction for this offense "was a 'fill-in-the-blank' order that merely stated Assault," without furnishing additional evidence of violent behavior [Doc. 78 p. 1]. The defendant asserted that such conduct is not inherently dangerous, and further that his past history of violent conduct is considerably aged. Next, the defendant argued that the government's claim that his employment is not verified is inaccurate, as he provided sufficient proof of employment to Judge Shirley before the release order issued. Indeed, at the hearing, defense counsel proffered that the defendant is now working two separate jobs. As for his post-release living situation, the defendant argued that, in contacting the probation officer when problems arose after he returned to his girlfriend's house, the defendant was merely acting responsibly. The defendant therefore asserted that Judge Shirley made a thoughtful, reasonable decision based on the evidence presented at the hearing and the safeguards available to nullify any potential risks to the community.

After considering all of these arguments, the Court issued an oral ruling revoking Judge Shirley's decision and ordering the defendant detained pending his revocation hearing [Doc. 79]. The Court now provides this memorandum opinion to explain the reasoning underlying this ruling in greater detail.

## II. Standard of Review

Federal Rule of Criminal Procedure 32.1(a)(1) provides that a person arrested for violating her conditions of supervised release "must be taken without unnecessary delay before a magistrate judge." The magistrate judge must order the person detained pending the final revocation hearing unless she "finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(a)(1). In this particular context, unlike most detention hearings, the burden of proving suitability for release by clear and convincing evidence rests with the defendant. Fed. R. Crim. P. 32.1(a)(6). If the magistrate judge does order the defendant released, "the attorney for the Government may file with the [district court] a motion for revocation of the order or amendment of the conditions of release." 18 U.S.C. § 3145(a)(1). Such a motion "shall be determined promptly." *Id.*

The district court's review of the magistrate judge's release or detention order is *de novo*. *United States v. Bush*, No. 3:12-cr-140, 2013 WL 3884505, at *3 (E.D. Tenn. July 26, 2013); *see also United States v. Montgomery*, No. 09-20101, 2010 WL 1052339, at *1 (E.D. Mich. Mar. 19, 2010) (citing case law indicating that, although the Sixth Circuit Court of Appeals has not squarely addressed the proper standard of review of a magistrate judge's release or detention order, the majority of circuits to have considered the issue have held that *de novo* review is appropriate). The district court may rely both on the evidence and offers of proof presented at the original detention hearing before the magistrate judge, as well as additional evidence and offers of proof at its discretion. *United States v. Zapien*,

No. 3:14-cr-37, 2014 WL 1028435, at *2 (M.D. Tenn. Mar. 17, 2014); *see also United States v. Yamini*, 91 F. Supp. 2d 1125, 1129 (S.D. Ohio 2000) ("[M]eaningful *de novo* review means that the district court should engage in the same analysis, with the same options, under § 3142 as the magistrate judge.").

18 U.S.C. § 3142 provides the framework for the district court's analysis as to whether release pending a final revocation hearing is proper. *United States v. Webb*, 238 F.3d 426, at *2 (6th Cir. 2000) (table opinion).[3] The ultimate touchstone of this analysis is "whether there are conditions of release that will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." § 3142(g). If such conditions do exist, the court must order the defendant released "subject to the least restrictive further condition, or combination of conditions, that . . . will reasonably assure" the defendant's appearance and the community's safety. § 3142(c)(1)(B). The key considerations in making this determination include, but are not limited to: (1) the nature and circumstances of the offense, including whether it is a crime of violence; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, e.g., her character, mental and physical condition, family and community ties, employment

---

[3] The *Webb* decision dealt with detention pending trial, rather than detention pending a supervised release revocation hearing. 238 F.3d 426, at *1. Nevertheless, the applicability of § 3142 to this case is apparent from a chain of statutory language. Rule 32.1(a)(6) permits the Court to "release or detain the [defendant] under . . . § 3143(a)(1) pending further proceedings." Section 3143(a)(1) then provides that the Court must order the defendant detained unless sufficient conditions of release under § 3142(b) or (c) are available to reasonably assure the defendant's appearance and the community's safety. And finally, § 3142(g) provides that the Court must, in making that determination, consider four enumerated factors. Thus, the § 3142(g) factors provide the framework for determining whether the defendant has carried his burden of proving by clear and convincing evidence that he is entitled to release.

status, financial resources, criminal history, substance-abuse history, and probation or supervised release status; and (4) the nature and seriousness of the danger posed to the community by the defendant's potential release. § 3142(g).

In considering the § 3142(g) factors, the court may consider both actual convictions and mere arrests or indictments to assess the defendant's dangerousness, though the latter will typically weigh less heavily in favor of detention. *See United States v. Acevedo-Ramos*, 755 F.2d 203, 209 (1st Cir. 1985) (finding that the authors of the Bail Reform Act of 1984 intended for judges to "rely on a defendant's past bad conduct that had led to indictment but not conviction" under some circumstances); *United States v. Rodriguez*, No. 07-709, 2007 WL 4373042, at *4 (E.D. Pa. Dec. 13, 2007) (noting that "while the [c]ourt places less weight on [a] defendant's arrests that were later dismissed, they are a factor to consider in assuring the safety of the community"); *cf. United States v. Massey*, No. 3:11-cr-12-33, 2014 WL 3671885, at *4 (M.D. Tenn. July 23, 2014) (upholding a detention order in part because the defendant recently entered a guilty plea to a drug charge in state court). In any event, the court may consider evidence of the defendant's past or present wrongful conduct as indicative of a defendant's dangerous tendencies, regardless of whether such conduct resulted in a state or federal prosecution. This is because the § 3142(g) analysis is concerned with a practical assessment of the defendant's dangerousness, rather than an adjudication of guilt for a particular offense. *See United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010) (noting that § 3142(g) "neither requires

nor permits a pretrial determination of guilt" (quoting *United States v. Gebro*, 948 F.2d 1118, 1221 (9th Cir. 1991))).

## III. Analysis

Although the parties did not frame their arguments in the context of the § 3142(g) factors—either in their written submissions or at the motion hearing—the Court finds that doing so is the most efficient way to answer the critical question at hand: "whether there are conditions of release that will reasonably assure . . . the safety of any other person and the community." § 3142(g).[4] Thus, the Court will address each § 3142(g) factor in turn to determine whether the defendant's release is proper under § 3143(a)(1).

### A. The Nature and Circumstances of the Offense

The first § 3142(g) factor considers "the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a [sex trafficking offense], a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device." § 3142(g)(1). The "offense" at issue here is that for which revocation of the defendant's supervised release is sought. Furthermore, federal law defines "crime of violence" for purposes of § 3142 to include any "offense that has as an element . . . the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 3156(a)(4).

---

[4] Because the government has conceded that the defendant does not pose a flight risk, the Court finds that the defendant has carried his burden of proving, by clear and convincing evidence, that conditions of release exist that will reasonably assure his future appearances in court.

Here, based on the proffer of defense counsel, the defendant has pleaded guilty to simple (misdemeanor) assault under Tennessee law. Under Tenn. Code Ann. § 39-13-101, a person commits simple assault by: (1) intentionally, knowingly, or recklessly causing bodily injury; (2) intentionally or knowingly causing another reasonable fear of imminent bodily injury; or (3) intentionally or knowingly causing extremely offensive or provocative physical contact. Thus, under any of the three paths to liability in § 39-13-101, Tennessee simple assault constitutes a "crime of violence" under § 3142(g)(1). *See United States v. Jenkins*, No. 3:17-cr-124, 2017 WL 2985408, at *3 (M.D. Tenn. July 13, 2017) (finding that "assault . . . is a crime of violence and its commission is a threat to public safety"). Although the Court lacks much detail concerning the specific facts underlying this offense, the defendant's admission to threatening violence to another—only three weeks after his release from prison—in itself raises concerns about the danger he poses to the community. And, to the extent any facts not presently before the Court may have reduced the apparent severity of this offense, the defendant bore the burden of bringing those facts to light. *See* Fed. R. Crim. P. 32.1(a)(6). The Court thus finds that the first factor weighs in favor of detaining the defendant pending his revocation hearing.

### B. The Weight of Evidence Against the Defendant

The second § 3142(g) factor considers the weight of evidence against the defendant regarding the offense for which revocation of supervised release is sought. § 3142(g)(2). The Sixth Circuit has made clear, however, that "[t]his factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*,

608 F.3d at 948 (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985)). Here, the bulk of the evidence before the Court points to risks the defendant poses to the safety of the community, even though it was the defendant's burden to introduce clear and convincing evidence to the contrary. *See* Fed. R. Crim. P. 32.1(a)(6). Most notably, the government introduced evidence of a Facebook message the defendant sent on the day of his arrest [Doc. 81]. The government characterized this message as a threat to the victim family that the defendant would provide their addresses to his fellow gang members if they reported him to the police. Defense counsel did not dispute this characterization. Instead, the only evidence offered by the defendant consisted of a proffer concerning his employment options and living situation, which the Court does not find to meaningfully diminish the risk of harm to the community that the Facebook message suggests. Moreover, the other facts before the Court—i.e., the defendant's lengthy history of arrests, convictions, violent conduct, and threats, as well as his recent plea to simple assault—all point to the defendant's potential dangerousness. Therefore, the Court finds that the second § 3142(g) factor weighs in favor of detention.

    **C.    The History and Characteristics of the Defendant**

The third § 3142(g) factor considers the defendant's history and characteristics, including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, . . . drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings."

§ 3142(g)(3)(A). The Court should also consider whether the defendant was on probation, parole, or supervised release for any federal, state, or local offense. § 3142(g)(3)(B).

Here, neither party disputes that the defendant has a lengthy history of arrests and convictions, many for actual or threatened violence. Indeed, the defendant was convicted of assaulting a Deputy United States Marshal [No. 3:10-cr-30, Doc. 27], and threatened a federal judge and Assistant United States Attorney in the process of doing so. Although the defendant argues that many of his past convictions are considerably aged, the Court notes that the defendant has exhibited a steady pattern of violent conduct and threats from a young age to the present. Moreover, the most recent temporal gap in incidents of violence is due to the fact that the defendant was incarcerated for more than seven years as a result of his federal convictions. The Court also notes that the defendant has been diagnosed with bipolar disorder and related antisocial conditions and has a long history of treatment for mental health issues—beginning as early as age four [No. 3:10-cr-30, Doc. 23 p. 6]. And the defendant has previously argued that such treatment has been in large part ineffective [*See* Doc. 44 pp. 1–4]. Indeed, the defendant has previously acknowledged what Judge Shirley recognized at the detention hearing—the defendant struggles to control his violent impulses as a result of his mental illness [No. 3:10-cr-30, Doc. 23 p. 7].

The Court notes that the defendant has ties to the local community, has family in the area with whom he may reside (i.e., his brother and sister), and appears to have secured employment. On the other hand, as the government notes, the victims of the defendant's past threats of violence—including the recent assault conviction—have often been his close

family and friends. Thus, even assuming the defendant will maintain a stable employment and living situation, the Court finds that this evidence alone does not significantly mitigate the defendant's long history of violent conduct, as recently corroborated by another assault conviction. And, while the defendant may contend that the conduct underlying this conviction may not be *as* serious as some of his past offenses, the Court nonetheless finds that this offense evinces a continued pattern of violent conduct and disrespect for the law. *See United States v. McIntosh*, No. 02-cr-20049-02, 2012 WL 762614, at *1 (E.D. Mich. Mar. 9, 2012) (finding that the defendant's "consistent pattern of conduct contrary to the conditions of his supervised release" suggested a risk of "danger to the community if [the defendant were] released"). This is especially true given the close proximity between the defendant's release from prison and the commission of this offense. Accordingly, the Court finds that the weight of evidence concerning the defendant's personal history and characteristics favors detention pending a final revocation hearing.

### D. The Nature and Seriousness of the Danger to the Community

The fourth § 3142(g) factor considers the "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." § 3142(g)(4). Many of the considerations discussed above weigh in favor of detention under this factor as well. In addition, the Court finds that the conditions of release imposed by Judge Shirley—while certainly more stringent than the ordinary case—would not adequately ensure the safety of the community if the defendant were released. Home detention pending the defendant's final revocation hearing would somewhat reduce the risk

15

that the defendant will commit another act of violence, and a ban on social media use and contact with the victims of the assault conviction would make it more difficult for the defendant to communicate any more threats of harm. Nevertheless, a condition of release is effective only to the extent that the defendant can reasonably be expected to comply with it. Given that the defendant admittedly committed a crime of violence only three weeks after his term of supervised release began, and given his lengthy history of noncompliance with the law and disrespect for authority figures, the Court is not convinced that these conditions will reasonably assure the safety of the community. Thus, the Court finds that the fourth factor also weighs in favor of detention.

In sum, all four § 3142(g) factors weigh in favor of detaining the defendant until his final revocation hearing. The Court therefore finds that the defendant has failed to carry his burden of proving by clear and convincing evidence that he is entitled to release.

## IV.  Conclusion

Accordingly, for the reasons explained above, the Court has revoked Judge Shirley's November 16, 2017, Order Setting Conditions of Release [No. 3:09-cr-56, Doc. 77; No. 3:10-cr-30, Doc. 43]. In accordance with the oral order the Court issued at the motion hearing in this matter, the defendant will remain in federal custody pending his final revocation hearing, currently scheduled for December 14, 2017 [Doc. 70].

ORDER ACCORDINGLY.

s/ Thomas A. Varlan<br>
CHIEF UNITED STATES DISTRICT JUDGE